## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THEODORE DRACHMAN, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. _____ |
| v. | ) | |
| | ) | |
| LENNAR CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT FOR ATTORNEYS' FEES AND EXPENSES

Plaintiff Theodore Drachman ("Plaintiff"), by his undersigned counsel, alleges upon information and belief, except for his own acts, which are alleged upon personal knowledge, as follows:

1.     Plaintiff brings this action against Lennar Corporation ("Lennar" or the "Company") seeking an award of attorneys' fees and expenses for a benefit conferred on the Company's stockholders by means of a pre-suit demand that caused corrective action to be taken and enabled stockholders to render a fully-informed vote on a proposed contract between the Board and Lennar's stockholders.

2.     On March 10, 2022, Plaintiff sent a stockholder demand letter (the "Demand," attached hereto as Exhibit A) to Lennar's board of directors (the "Board"). In the Demand, Plaintiff alleged that the Company's Schedule 14A

Definitive Proxy Statement filed with the U.S. Securities and Exchange Commission (the "SEC") on March 1, 2022 (the "Proxy," attached hereto as Exhibit B) in connection with the Company's 2022 Annual Meeting of Stockholders (the "Annual Meeting") was materially false and misleading.

3.      Specifically, in Proposal 4 of the Proxy ("Proposal 4"), the Board sought stockholder approval of various amendments to the Lennar Corporation 2016 Equity Incentive Plan (the "Plan"), a plan that had reserved over 15,000,000 shares of Lennar common stock for issuance as equity awards to the Company's officers, employees, non-employee directors, and other service providers. In describing the list of amendments, the Proxy explained to stockholders that the Board had increased the number of shares of the Company's common stock authorized for issuance under the Plan by an additional 10,000,000 shares.

4.      However, nowhere in the Proxy did the Board inform Lennar's stockholders that, as part of the amendments, the Board removed provisions of the Plan that capped the amount of equity awards that could be granted to an individual participant in any calendar year. This per-person annual award cap helped minimize the dilution risk to stockholders from the Plan, while also serving as a tool to curb excessive executive compensation. Indeed, as described by the Board when it originally sought stockholder approval of the Plan in 2016, this cap, which the Board secretly jettisoned as part of the most recent amendments, was "consistent with good

corporate governance practices." As the Delaware Court of Chancery recently noted with respect to a company that had made similar disclosures concerning a cap in its stockholder-approved equity plan, the cap was a matter of "evident importance" to stockholders. *Garfield v. Allen*, 277 A.3d 296 (Del. Ch. 2022).

5.     Plaintiff accordingly demanded that the Board issue a supplemental disclosure prior to the stockholder vote at Annual Meeting to inform stockholders that the per-person annual equity cap had been removed. In response to the Demand, Lennar issued a supplement to the Proxy on March 16, 2022 (the "Supplement," attached hereto as Exhibit C). In the Supplement, Lennar "add[ed] background information regarding Proposal 4," including that the amended and restated Plan "removes provisions previously included," such as "the individual award limits and the related provisions requiring such approval of awards."

6.     It is well established that a stockholder and his counsel are entitled to an award of attorneys' fees and expenses for producing a benefit that inures to stockholders as a group. *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 396 (1970); *Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1164-65 (Del. 1989). This principle – known as the common or corporate benefit doctrine – includes any tangible and substantial benefit that is conferred on a company and its stockholders, including "[c]hanges in corporate policy or," as here, "a heightened level of corporate disclosure" to stockholders. *Tandycrafts*, 562 A.2d at 1164-65. The

entitlement to an award of reasonable attorneys' fees includes situations where, as here, a stockholder presents a demand asserting a meritorious legal claim that is resolved without litigation. *Bird v. Lida*, 681 A.2d 399, 405-07 (1996). Accordingly, Plaintiff seeks an award of attorneys' fees and expenses in connection with the substantial benefit he conferred on the Company's stockholders. Were it not for his counsel's monitoring and investigation of the Company's SEC filings, and the resulting Demand, stockholders would have been deprived of their fundamental right to an informed vote at the Annual Meeting.

7.     Plaintiff attempted to resolve his request for a reasonable attorneys' fee without litigation but the Company refused to engage.

## PARTIES

8.     Plaintiff is, and has been at all relevant times, the owner of Lennar common stock. Plaintiff was entitled to vote at the Annual Meeting.

9.     Lennar is a corporation organized and existing under the laws of the State of Delaware, which maintains its principal offices in Miami, Florida. As described its most recent Form 10-K Annual Report, the most substantial part of Lennar's business is its homebuilding operations.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because the parties are of diverse citizenship and the matter in controversy exceeds $75,000, exclusive of interests and costs.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant Lennar is incorporated in this District.

## SUBSTANTIVE ALLEGATIONS

12.     In seeking stockholder approval of amendments to the Plan, the Board was required to make full, fair, and truthful disclosures. The Board was required to provide stockholders with "a balanced, truthful account of all matters" the Board was asking stockholders to approve. *In re Pure Res. Inc. S'holders. Litig.*, 808 A.2d 421, 448 (Del. Ch. 2002) (citing *Malone v. Brincat*, 722 A.2d 5, 12 (Del. 1998)). "When a document ventures into certain subjects," such as the Proxy's discussion of the amendments that the Board made to the Plan, "it must do so in a manner that is materially complete and unbiased by the omission of material facts." *Id.*

**A.     The Plan**

13.     The Plan was originally adopted by the Board and approved by the Company's stockholders in 2016. The Plan reserved 15,000,000 shares of Lennar common stock for issuance as equity awards to the Company's officers, employees, non-employee directors, and other service providers.

14.    As approved in 2016, the Plan imposed annual caps on the amount of equity awards an individual participant may receive. Specifically, Section 3.1 of the Plan, titled "Shares and Units Subject to the Plan," imposed an annual cap on the amount of equity awards. As approved by Lennar's stockholders in 2016, Section 3.1 of the Plan provided:

3.1 Aggregate Limits. Subject to adjustments as provided in Section 12, the total number of Shares subject to Awards granted under the Plan, in the aggregate, shall be 15,000,000. ***The maximum number of Shares that may underlie Awards, other than Options, granted in any one calendar year to any Eligible Person, shall not exceed 500,000.*** Subject to adjustments pursuant to Section 12, Incentive Stock Options with respect to an aggregate of no more than 14,500,000 Shares may be granted under the Plan, ***and in no event may any Eligible Person receive Options (or stock appreciation rights) for more than 1,000,000 Shares during any calendar year.*** Notwithstanding the foregoing, except in the case of Awards intended to qualify as "performance-based compensation" within the meaning of Section 162(m) of the Code, there shall be no per-person limit on the number of Phantom Shares to the extent they are paid out in cash that may be granted under the Plan (emphasis added).

15.    Accordingly, pursuant to Section 3.1, during any calendar year, no individual participant was permitted to receive: (1) stock options or stock appreciation rights ("SARs") covering more than 1,000,000 shares; or (2) other equity awards covering more than 500,000 shares (the "Per-Person Award Limitations").

16.    When the Board sought stockholder approval of the Plan in 2016, the Board acknowledged the importance of the Per-Person Award Limitations. As described in the Company's Schedule 14A Proxy Statement filed with the SEC on March 2, 2016 (the "2016 Proxy"):

> The Board of Directors seeks stockholder approval of the 2016 Equity Plan in order to satisfy certain legal requirements, including requirements of the New York Stock Exchange ("NYSE"), and to make awards under it eligible for beneficial tax treatment. In addition, the Board of Directors regards stockholder approval of the 2016 Equity Plan as desirable and consistent with good corporate governance practices.
>
> ***
>
> **Description of the 2016 Equity Incentive Plan**
>
> ***Authorized Shares***. The shares of our Class A common stock or Class B common stock (together, "Common Stock") distributed under the 2016 Equity Plan may be treasury shares or authorized but unissued shares of our Common Stock. The aggregate number of shares of the Common Stock subject to awards granted under the 2016 Equity Plan is 15,000,000, subject to adjustment as described below. No more than 500,000 shares of our Common Stock may underlie awards, other than stock options (or stock appreciation rights), granted to any participant during a calendar year under the 2016 Equity Plan. Further, subject to adjustments, Incentive Stock Options ("ISOs") with respect to an

aggregate of no more than 14,500,000 shares may be granted under the 2016 Equity Plan, and in no event may any participant receive stock options (or stock appreciation rights) for more than 1,000,000 shares during any calendar year under the 2016 Equity Plan. However, the foregoing individual limits will not affect the number or types of stock or stock-based awards that a participant may receive under any other equity plan or arrangement of the Company in effect from time to time.

**B.   The Board adopts Amendments to the Plan and issues the False and Misleading Proxy.**

17.   On January 12, 2022, the Board adopted an amended and restated Plan subject to stockholder approval. In the amended and restated Plan, the Board made a number of amendments. The Board increased the number of shares reserved under the Plan by an additional 10,000,000 shares. As of January 12, 2022, only 5,604,233 shares of the 15,000,000 shares remained under the Plan's reserve. Thus, if stockholders approved the amended and restated Plan, there would be 15,604,233 shares of Lennar common stock available for issuance under the Plan.

18.   At the same time the Board added 10,000,000 shares to the Plan, it removed an important limitation on how those shares could be distributed. Specifically, the Board removed the Per-Person Award Limitations from the Plan entirely. As amended, the Plan no longer restricted the amount of stock options, SARs, other equity awards that an individual participant may receive annually. Section 3.1 of the amended and restated Plan was transformed into the following:

3.1   <u>Aggregate Limits</u>. As of the Effective Date, an aggregate of 15,000,000 Shares were available for awards under the Plan (subject to adjustments as provided in Section 12), of which approximately

5,604,233 shares remained available as of January 12, 2022. As amended and restated as of January 12, 2022, and effective upon approval by stockholders of the Company, the total number of Shares subject to Awards granted under the Plan is increased by an additional 10,000,000 Shares and, in the aggregate, shall be 25,000,000, subject to adjustments as provided in Section 12. Subject to adjustments pursuant to Section 12, Incentive Stock Options with respect to an aggregate of no more than 24,000,000 Shares may be granted under the Plan.

19.    On March 1, 2022, Lennar filed the Proxy with the SEC in connection with the Annual Meeting. The Board sought stockholder approval of the amended and restated Plan in Proposal 4, which stated:

> The primary purposes of the amendment and restatement of the 2016 Equity Plan are to (i) increase the number of shares of our Common Stock authorized for issuance under the 2016 Equity Plan by an additional 10,000,000 shares (subject to adjustment for stock splits, stock dividends and similar events), (ii) extend the term of the 2016 Equity Plan to January 12, 2032 (the 10-year anniversary of the approval of the Amended Equity Plan by the Board) and (iii) remove provisions of the 2016 Equity Plan included to comply with the exception for "performance-based compensation" under Section 162(m) of the Internal Revenue Code, or the Code, which was repealed in December 2017. As of January 12, 2022, there were 5,604,233 shares remaining available for issuance under the 2016 Equity Plan. If the Amended Equity Plan were effective on January 12, 2022, there would be 15,604,233 shares remaining available for issuance (the 5,604,233 shares currently available for issuance and the additional 10,000,000 approved for issuance under the Amended Equity Plan).

***

> **Authorized Shares**. The shares of our Class A common stock or Class B common stock (together, "Common Stock") distributed under the Amended Equity Plan may be treasury shares or authorized but unissued shares of our Common Stock. Under the 2016 Equity Plan (as

adopted by the Board of Directors on January 13, 2016 and approved by the stockholders of the Company on April 13, 2016), an aggregate of 15,000,000 shares of our Common Stock were available for awards under the 2016 Equity Plan (subject to adjustment as described below), of which approximately 5,604,233 shares remained available as of January 12, 2022. As amended and restated as of January 12, 2022, and effective upon approval by stockholders of the Company, the total number of shares of Common Stock subject to awards granted under the Amended Equity Plan is increased by an additional 10,000,000 shares and, in the aggregate, will be 25,000,000, subject to adjustment as described below. Further, subject to adjustments, Incentive Stock Options ("ISOs") with respect to an aggregate of no more than 24,000,000 shares may be granted under the Amended Equity Plan.

20.     The Board's removal of the Per-Person Award Limitation was ***not*** disclosed anywhere in this description of the amendments the Board made to the Plan (or in any part of the Proxy for that matter).

21.     As a material term that had been described to stockholders as "good corporate governance," the Board's removal of the Per-Person Award Limitations contemplated an important change to the Plan. This change needed to be disclosed to stockholders. With 15 million shares originally reserved for issuance under the Plan, the Per-Person Award Limitations helped minimize dilution and served as a tool to curb excessive executive compensation.[1]

---

[1] In addition to serving stockholders' interests in this way, the Per-Person Award Limitations served a tax purpose as well. Section 162(m) of the Internal Revenue Code ("Section 162(m)") subjects publicly-held corporations, such as Lennar, to special restrictions concerning the compensation paid to their chief executive officer and certain other highly-compensated executives (the "Covered Employees"). Specifically, Section 162(m)(1) provides that compensation in excess of $1 million paid by a publicly-held corporation to any of the Covered Employees is generally

22.     Prior to its removal by the Board, the Per-Person Award Limitations capped the amount of equity that an individual participant could receive each year at 1,000,000 for stock options and SARs, and 500,000 for all other equity awards. In removing this provision, however, the Board claimed unfettered discretion to grant any participant an unlimited number of equity awards (subject only to the 15,604,233-share aggregate Plan reserve) at any time. Indeed, in the absence of the Per-Person Award Limitations, the Board could grant all 15,604,233 shares as a time-based restricted stock award to the Company's Chief Executive Officer in one shot.  Yet, any stockholder reading the Proxy's description of the Amendments had no idea of this drastic change to the Plan. Certainly, the wholesale removal of such a key provision needed to be disclosed to stockholders before they voted on the amended and restated Plan.

---

not tax-deductible (the "$1 Million Deduction Limit"). Until the passage of the Tax Cuts and Jobs Act (the "TCJA") in December 2017, Section 162(m)(4)(C) provided that compensation in excess of the $1 Million Deduction Limit would still be tax-deductible if it qualified as "performance-based compensation" (the "Performance-Based Compensation Exception"). The ability to take advantage of the Performance-Based Compensation Exception was guided by Section 1.162-27 of the Treasury Regulations ("Treas. Reg."), promulgated under Section 162(m), which provided a set of rules to be followed in order for compensation to qualify as "performance-based compensation," and be tax-deductible under Section 162(m)(4)(C). For stock options and SARs to qualify as tax-deductible "performance-based compensation" under Section 162(m), the Treasury Regulations required, among other things, that the stock options/SARs be granted pursuant to a stockholder-approved plan that discloses "the maximum number of shares with respect to which options or rights may be granted during a specified period to any individual employee." *See* Treas. Reg. Section 1.162-27(e)(2)(vi)(A). Likewise, with respect to other equity awards, the Treasury Regulations required, among other things, that the awards be granted pursuant a stockholder-approved plan that disclosed the "the maximum amount of compensation that could be paid to any employee." *See* Treas. Reg. Section 1.162-27(e)(4)(i). The Per-Person Award Limitations satisfied these requirements.

23.    The Proxy not only failed to disclose material information, but was affirmatively misleading as well. By providing a list in Proposal 4 of the amendments made to the Plan, the Board had a duty to provide a complete and accurate list, especially with respect to material changes. In this list, the Board disclosed that it was increasing the aggregate limit, extending the term of the Plan, and making tax-related changes as a result of the passage of the TCJA in December 2017,[2] yet inexplicably left out a material change (removal of the Per-Person Award Limitations) that many stockholders were likely to find problematic.

**C.    After Plaintiff served his Demand, the Board promptly took corrective action.**

24.    In an attempt to obtain timely corrective action in advance of the Annual Meeting, Plaintiff served his Demand on March 10, 2022.

25.    In his Demand, Plaintiff explained why the Proxy was materially false and misleading, and demanded that the Board issue a supplemental disclosure to

---

[2] Though, as described above, the Per-Person Award Limitations helped satisfy Section 162(m)'s stockholder approval requirements and the Proxy disclosed that the proposed amendments "remove[d] provisions of the 2016 Equity Plan included to comply with the exception for "performance-based compensation," no reasonable stockholder reading the Proxy would understand this to mean that the Per-Person Award Limitations has been discarded entirely, especially given that this provision also served important non-tax-related purposes. Indeed, the Per-Person Award Limitations were included in a section of the Plan entitled "Aggregate Limits" while the provisions that were included in the Plan solely for tax-related purposes were included in Section 8 of the Plan.

correct the Proxy before stockholders voted at the Annual Meeting. The Demand was delivered on April 12, 2022 via email to a Company representative, and in hard copy the following morning via UPS.

26.    In response to the Demand, the Company disseminated the Supplement on March 16, 2022.  In the Supplement, Lennar informed stockholders that the Per-Person Award Limitations had been removed from the Plan. Specifically, the Supplement stated that it was being "furnished in order to add background information regarding Proposal 4." The Supplement specifically disclosed the removal of the Per-Person Award Limitations, stating as follows:

> As set forth in the 2022 Proxy Statement, Proposal 4 seeks stockholder approval of the Amended Equity Plan primarily to (i) increase the number of shares of our Common Stock authorized for issuance under the 2016 Equity Plan by an additional 10,000,000 shares (subject to adjustment for stock splits, stock dividends and similar events), (ii) extend the term of the 2016 Equity Plan to January 12, 2032 (the 10-year anniversary of the approval of the Amended Equity Plan by the Board) and (iii) remove provisions of the 2016 Equity Plan included to comply with the exception for "performance-based compensation" under Section 162(m) of the Internal Revenue Code, or the Code, which was repealed in December 2017 ("Section 162(m) Changes").

> Included in the Section 162(m) Changes were the removal of annual limits on awards that an individual participant could receive. Under these limits, the maximum number of shares that may underlie awards (other than (i) stock options and (ii) phantom shares paid in cash that are not intended to qualify as "performance-based compensation" under Section 162(m) of the Code) granted in any one calendar year to any individual could not exceed 500,000, and no individual could receive stock options (or stock appreciation rights) for more than 1,000,000 shares during any calendar year.

***

As a result, the Amended Equity Plan removes provisions . . . including . . . the individual award limits and the related provisions requiring approval of such awards and the certification of the attainment of the relevant performance goals by a committee of "outside directors", as there is no longer any potential tax benefit for a plan to retain these provisions. The appropriate sizing of awards under the Amended Equity Plan will continue to be subject to the discretion of our Compensation Committee, which is composed solely of independent directors and is expected to oversee a compensation program with a significant emphasis on performance-based awards.

The removal of annual individual award limits explained above also applies to awards to our non-employee directors, who are eligible to receive awards under the Amended Equity Plan.

27.     Following the supplemental corrective disclosures, at the Annual Meeting, the Company's stockholders approved the amendments to the Plan.

## CAUSE OF ACTION
## PLAINTIFF'S CLAIM FOR A MOOTNESS FEE

28.     The Demand raised meritorious legal claims with respect to the Board's false and misleading disclosures in the Proxy.

29.     In response to the meritorious Demand, Lennar remedied the disclosure problems, which directly conferred a substantial benefit on the Company's stockholders, which in turn entitles Plaintiff to receive a reasonable attorneys' fee.

30.     Plaintiff's counsel attempted to obtain a reasonable attorneys' fee from the Company without resort to litigation, but the Company refused to engage.

31.     Plaintiff's counsel has expended time and expense, completely at risk of loss and without remuneration, in connection with its successful detection and remediation of the disclosure problems asserted in the Demand, which permitted stockholders to make an informed decision about whether to approve the amended Plan at the Annual Meeting.

32.     Plaintiff and his counsel are a direct and proximate cause of this common benefit, and it would be unjust and inequitable not to compensate Plaintiff's counsel for achieving it.

WHEREFORE, for the foregoing reasons, Plaintiff requests an order:

A.     Awarding attorneys' fees and expenses commensurate with the benefit that has been conferred as a result of the efforts undertaken by Plaintiff and his counsel, including attorneys' fees and expenses for the prosecution of this action;

B.     Granting such other relief as the Court may deem just and proper.

Dated: May 10, 2023                         Respectfully submitted,

                                            FARNAN LLP

                                            /s/ Michael J. Farnan
                                            Brian E. Farnan (Bar. No. 4089)
                                            Michael J. Farnan (Bar No. 5165)
                                            919 North Market Street, 12th Floor
                                            Wilmington, DE 19801
                                            (302) 777-0300
                                            (302) 777-0301 (Fax)
                                            bfarnan@farnanlaw.com
                                            mfarnan@farnanlaw.com
                                            *Attorneys for Plaintiff*