# EXHIBIT A

# PURCELL JULIE & LEFKOWITZ LLP

200 PARK AVENUE, SUITE 1700, NEW YORK, NY 10166

STEVEN J. PURCELL | spurcell@pjlfirm.com | 212-840-6300

March 10, 2022

**VIA UPS & EMAIL**

Lennar Corporation
Board of Directors
700 Northwest 107th Avenue
Miami, Florida 33172
feedback@lennar.com and Allison.Bober@lennar.com

**Re: Stockholder Litigation Demand**

To the Board of Directors of Lennar Corporation:

We write on behalf of our client, Theodore Drachman, a Lennar Corporation ("Lennar" or the "Company") stockholder entitled to vote at the Company's 2022 Annual Meeting of Stockholders scheduled for April 12, 2022 (the "Annual Meeting"). On behalf of Lennar and its stockholders, our client demands that the Company's board of directors (the "Board") correct the materially false and misleading representations that appear in Lennar's Schedule 14A Definitive Proxy Statement filed with the U.S. Securities and Exchange Commission (the "SEC") on March 1, 2022 (the "2022 Proxy") in connection with the Annual Meeting. As described below, in soliciting stockholder approval of amendments to the Company's 2016 Equity Incentive Plan (the "Plan") via Proposal 4 of the 2022 Proxy ("Proposal 3"), the Board misrepresents material changes made to the Plan.

**A.   The Plan**

The Plan was originally adopted by the Board and approved by the Company's stockholders in 2016. The Plan reserved 15,000,000 shares of Lennar common stock for issuance as equity awards to the Company's officers, employees, non-employee directors, and other service providers.

As approved in 2016, the Plan imposed annual caps on the amount of equity awards that an individual participant may receive. Specifically, Section 3.1 of the Plan provided:

> 3.1 <u>Aggregate Limits</u>. Subject to adjustments as provided in Section 12, the total number of Shares subject to Awards granted under the Plan, in the aggregate,

shall be 15,000,000. ***The maximum number of Shares that may underlie Awards, other than Options, granted in any one calendar year to any Eligible Person, shall not exceed 500,000.*** Subject to adjustments pursuant to Section 12, Incentive Stock Options with respect to an aggregate of no more than 14,500,000 Shares may be granted under the Plan, ***and in no event may any Eligible Person receive Options (or stock appreciation rights) for more than 1,000,000 Shares during any calendar year***. Notwithstanding the foregoing, except in the case of Awards intended to qualify as "performance-based compensation" within the meaning of Section 162(m) of the Code, there shall be no per-person limit on the number of Phantom Shares to the extent they are paid out in cash that may be granted under the Plan (emphasis added).

Thus, the Plan prohibited awards of stock options or stock appreciation rights ("SARs") covering more than 1,000,000 shares, or other equity awards covering more than 500,000 shares, to any individual participant per year (the "Per-Person Award Limitations").

**B.     The Board adopts amendments to the Plan**

On January 12, 2022, the Board adopted an amended and restated Plan subject to stockholder approval. In the amended and restated Plan, the Board made a number of changes. The Board increased the number of shares reserved under the Plan by 10,000,000 shares. As of January 12, 2022, only 5,604,233 shares of the 15,000,000 original shares remained available under the Plan's reserve. Thus, if stockholders approve the amended and restated Plan there will be 15,604,233 shares of common stock available for issuance under the Plan. But another amendment the Board made was to remove the Per-Person Award Limitations from the Plan: Section 3.1 of the Plan no longer restricts the amount of stock options, SARs, or other equity awards that an individual participant may receive annually. The Board made certain other amendments to the Plan, as described below.

**C.     The False and Misleading 2022 Proxy**

On March 1, 2022, Lennar filed its 2022 Proxy with the SEC in connection with the Annual Meeting. The Board is seeking stockholder approval of the amended and restated Plan in Proposal 4, which is titled "Approval of Lennar Corporation 2016 Equity Incentive Plan, as Amended and Restated." In Proposal 4, the 2022 Proxy describes the list of amendments to the Plan that the Board has adopted. Specifically, the 2022 Proxy states:

> The primary purposes of the amendment and restatement of the 2016 Equity Plan are to (i) increase the number of shares of our Common Stock authorized for issuance under the 2016 Equity Plan by an additional 10,000,000 shares (subject to adjustment for stock splits, stock dividends and similar events), (ii) extend the term of the 2016 Equity Plan to January 12, 2032 (the 10-year anniversary of the approval of the Amended Equity Plan by the Board) and (iii)

remove provisions of the 2016 Equity Plan included to comply with the exception for "performance-based compensation" under Section 162(m) of the Internal Revenue Code, or the Code, which was repealed in December 2017. As of January 12, 2022, there were 5,604,233 shares remaining available for issuance under the 2016 Equity Plan. If the Amended Equity Plan were effective on January 12, 2022, there would be 15,604,233 shares remaining available for issuance (the 5,604,233 shares currently available for issuance and the additional 10,000,000 approved for issuance under the Amended Equity Plan).

Notably, the removal of the Per-Person Award Limitations is not included in this description of the "primary" amendments to the Plan, nor is it disclosed anywhere else in the 2022 Proxy.

However, the removal of the Per-Person Award Limitations contemplates a material change to the Plan that must be disclosed to stockholders. Prior to its removal by the Board, the Per-Person Award Limitations capped the amount of equity awards that an individual participant could receive each year at 1,000,000 for stock options and SARs, and 500,000 for all other equity awards. With 15,000,000 shares originally reserved for issuance under the Plan, the Per-Person Award Limitations helped minimize dilution and served as a tool to curb excessive executive compensation.[1]  Now, if the amended and restated Plan is approved by

---

[1] In addition to serving stockholders' interests in this way, the Per-Person Award Limitations served a tax purpose as well. Section 162(m) of the Internal Revenue Code ("Section 162(m)") subjects publicly-held corporations, such as Lennar, to special restrictions concerning the compensation paid to their chief executive officer and certain other highly-compensated executives (the "Covered Employees"). Specifically, Section 162(m)(1) provides that compensation in excess of $1 million paid by a publicly-held corporation to any of the Covered Employees is generally not tax-deductible (the "$1 Million Deduction Limit"). Until the passage of the Tax Cuts and Jobs Act (the "TJCA") in December 2017, Section 162(m)(4)(C) provided that compensation in excess of the $1 Million Deduction Limit would still be tax-deductible if it qualified as "performance-based compensation" (the "Performance-Based Compensation Exception"). The ability to take advantage of the Performance-Based Compensation Exception was guided by Section 1.162-27 of the Treasury Regulations ("Treas. Reg."), promulgated under Section 162(m), which provided a set of rules to be followed in order for compensation to qualify as "performance-based compensation," and be tax-deductible under Section 162(m)(4)(C). For stock options and SARs to qualify as tax-deductible "performance-based compensation" under Section 162(m), the Treasury Regulations required, among other things, that the stock options/SARs be granted pursuant to a stockholder-approved plan that discloses "the maximum number of shares with respect to which options or rights may be granted during a specified period to any individual employee." *See* Treas. Reg. Section 1.162-27(e)(2)(vi)(A). Likewise, with respect to other equity awards, the Treasury Regulations required, among other things, that the awards be granted pursuant a stockholder-approved plan that disclosed the "the maximum amount of compensation that could be paid to any

stockholders, the Board will have unfettered discretion to grant any participant an unlimited number of equity awards (subject only to the 15,604,233-share aggregate Plan reserve) at any time. Indeed, if the amended Plan is approved, the Board could grant all 15,604,233 shares as a time-based restricted stock award to the Company's Chief Executive Officer in one shot. Because stockholders have not been informed of this change to the Plan, the stockholder vote on Proposal 4 will not be fully informed. *See, e.g., ODS Techs., L.P. v. Marshall*, 832 A.2d 1254, 1260-61 (Del. Ch. 2003) (affirmatively misrepresenting the "purposes or effects" of amendments proposed to stockholders rendered proxy statement false and misleading); *Shaev v. Saper*, 320 F.3d 373, 383-384 (3d Cir. 2003) ("We, therefore, hold that a proxy soliciting shareholders' approval of a proposed executive incentive compensation plan, which refers to an existing incentive plan, must disclose the material features of both plans. It must also state, if determinable, the amount of the increased benefits and performance goals under the proposed plan"); *St. Louis Police Ret. Sys. v. Severson*, C.A. No. 12-CV-5086 YGR, 2012 WL 5270125, at *6 (N.D. Cal. Oct. 23, 2012) (finding that failure to "accurately depict the purposes or effects" of proposed amendments to compensation plan was materially false and misleading).

Indeed, the Board has previously acknowledged the importance of the Per-Person Award Limitations. In Lennar's Schedule 14A Proxy Statement filed with the SEC on March 2, 2016 (the "2016 Proxy"), when the Board originally sought stockholder approval of the Plan, the Board provided a description of the Plan's terms, which specifically mentioned the Per-Person Award Limitations and touted that the Plan's terms are "consistent with good corporate governance practices" (2016 Proxy, p. 44). Ironically, in the 2022 Proxy, the Board also stresses to Lennar stockholders that stockholder approval of the amended and restated Plan is "consistent with good corporate governance practices," yet fails to let stockholders know that a good governance practice has been removed.

The Proxy is not merely incomplete, however; it is affirmatively misleading. By providing a list in Proposal 4 of the primary amendments made to the Plan, the Board has a duty to provide a complete and accurate list. *See, e.g., Arnold v. Soc'y for Sav. Bancorp*, 650 A.2d 1270, 1280 (Del. 1994) ("[O]nce defendants traveled down the road of partial disclosure of [certain events]…they had an obligation to provide the stockholders with an accurate, full, and fair characterization of those historic events"). In its list of changes to the Plan, the Board disclosed that it was increasing the aggregate limit, extending the term of the Plan, and making tax-related changes as a result of the passage of the TJCA in December 2017[2], yet inexplicably

---

employee." *See* Treas. Reg. Section 1.162-27(e)(4)(i). The Per-Person Award Limitations satisfied these requirements.

[2] Though, as described above, the Per-Person Award Limitations helped satisfy Section 162(m)'s stockholder approval requirements and the 2022 Proxy disclosed that the proposed amendments "remove[d] provisions of the 2016 Equity Plan included to comply with the exception for "performance-based compensation," no reasonable stockholder reading the 2022 Proxy would

left out a material change (removal of the Per-Person Award Limitations) that many stockholders are likely to find problematic.

In order to allow for a fully informed and valid stockholder vote, the Board must supplement the 2022 Proxy so that stockholders understand the effect of their vote on Proposal 4. Accordingly, on behalf of Lennar and its stockholders, our client hereby demands that the Board disseminate a corrective disclosure to inform stockholders that (a) the Plan contained a per-participant calendar year limit of 1,000,000 for each of stock options/SARs and 500,000 for other equity awards; and (b) as part of the amendments to the Plan, the Board removed these limits entirely.

If you fail to respond or contact us on or before March 24, 2022, we will be forced to assume that you have decided not to pursue any remedial action and we will take whatever steps we deem in the best interest of the Company and its stockholders, including but not limited to legal action and a request for injunctive relief to enjoin the vote on Proposal 4 at the Annual Meeting. If you have any questions, please do not hesitate to contact me. I look forward to hearing from you and appreciate your prompt attention to this matter.

Very truly yours,

Steven J. Purcell

---

understand this to mean that the Per-Person Award Limitations has been discarded entirely, especially given that this provision also served important non-tax-related purposes. Indeed, the Per-Person Award Limitations were included in a section of the Plan entitled "Aggregate Limits" while the provisions that were included in the Plan solely for tax-related purposes were included in Section 8 of the Plan.

5